IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD STOREK, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>FIDELITY & GUARANTY INSURANCE UNDERWRITERS, INC., et al.,<br><br>Defendants._____/ | No. C 06-06810 CRB<br><br>**ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

In this lawsuit, Richard and Craig Storek ("Plaintiffs") claim that Fidelity & Guaranty Insurance Underwriters ("FGIU") breached its duty to defend against a counterclaim filed by their brother in underlying state-court litigation. Now pending before the Court is FGIU's motion for summary judgment. For the reasons set forth below, that motion is GRANTED.

**BACKGROUND**

This case involves a family dispute about the management of a piece of property in San Francisco called the Storek Building. The lawsuit stems primarily from a dispute about the management of the building between three Storek brothers: Glenn, Richard, and Craig.

Members of the Storek family divided ownership of the building among themselves. Glenn owns a 50 percent share of the building. Richard and Craig have an interest of roughly 40 percent in the property; they do not own the property individually, but rather in

their roles as trustees of the Wencil C. Storek Trust ("WCS Trust"). Their mother, Lorraine, owns the remaining share of roughly ten percent, through a different trust that has been established in her name.

The defendant in this action, FGIU, issued an insurance policy to provide coverage to some of the owners of the Storek Building to protect them against losses they might sustain in connection with their ownership of the property. See Fitts Decl. Ex. A (hereinafter "Policy"). The named insureds on the Policy are Glenn Storek and the WCS Trust. The policy was in effect between June of 2004 and June of 2006. See Fitts Decl. Exs. A & B.

While the policy was in effect, a dispute arose within the family about the management of the Storek Building. One the one side was Glenn, and on the other side were Richard and Craig (and, to a lesser extent, their mother, Lorraine, whose financial affairs the two brothers apparently managed).

Along with their mother, Richard and Craig filed a lawsuit in San Francisco County Superior Court, accusing Glenn of malfeasance. In short, they accused Glenn of using funds related to the Storek Building for personal gain, without informing other family members about these transactions. First, they alleged that Glenn had received payments on a loan of $186,364 that had been issued collectively by the owners of the building, but that he had told the other owners that no such payments were being made. See Request for Judicial Notice, Ex. D, ¶¶ 4-8 (hereinafter "Underlying Complaint"). Second, they alleged that Glenn had used the building as security to obtain a different loan of $595,000, without telling his brothers or his mother. Id. ¶¶ 9-13. Third, they alleged that Glenn used his complete control over the financial affairs of the Storek Building to take $200,000 for his own personal benefit, without disclosing that taking to his family. Id. ¶¶ 14-17. Based on these allegations, the complaint set forth causes of action for conversion, fraud, and "elder financial abuse." Id. ¶¶ 18-22, 23-28, 29-34.

Glenn then filed a cross-complaint. See Request for Judicial Notice, Ex. E (hereinafter "Cross-Complaint"). The gist of the cross-complaint is that the rest of the family abdicated its responsibility for managing the Stork Building, leaving Glenn to maintain the

1  property on his own, and at great personal expense.  Glenn alleged that his brothers had taken
2  control of all assets related to the property, that they had taken none of the steps necessary to
3  maintain it -- such as "expend[ing] necessary funds for seismic upgrading" -- and that he,
4  Glenn, had been forced to maintain the property using his own funds.  Id. ¶¶ 9-14.  The
5  cross-complaint asserted forth twelve causes of action, including accounting, id. at ¶¶ 15-21;
6  breach of fiduciary duty, id. ¶¶ 22-29; conversion, id. ¶¶ 30-32; wasting of trust assets, id. ¶¶
7  33-35; conspiracy, id. ¶¶ 36-38; breach of contract (based on an alleged oral agreement
8  among the owners to make seismic repairs), id. ¶¶ 39-47; intentional interference with
9  prospective business advantage, id. ¶¶ 48-53; quantum meruit (to recover damages for the
10 time that Glenn allegedly spent improving and maintaining the building on behalf of the
11 other owners), id. ¶¶ 54-56; equitable contribution, id. ¶¶ 57-60; and fraud, id. ¶¶ 61-69.
12      Richard and Craig then tendered the cross-complaint to FGIU.  They asserted that the
13 insurer was obligated to provide a defense against Glenn's cross-complaint because, under
14 the terms of the Policy, FGIU was obligated to pay "those sums that the insured becomes
15 legally obligated to pay as damages because of bodily injury, property damage, personal
16 injury or advertising injury" and also "to defend the insured against any suit seeking those
17 damages."  Policy at STP00071.  FGIU declined to defend, stating that Glenn's
18 cross-complaint did not raise the potential for coverage.
19      This lawsuit followed, with Richard and Craig arguing that FGIU had breached its
20 duty to defend.  Now pending before the Court is FGIU's motion for summary judgment.
21 The question presented is whether Glenn's cross-complaint, or the evidence extrinsic to it,
22 raises the potential for liability under the Policy.

**DISCUSSION**

24      Richard and Craig contend that FGIU owes them a duty to defend based on the fact
25 that the Policy provides coverage against claims of "personal injury."  Policy at STP00071.
26 They observe that the Policy defines "personal injury" to include the "wrongful eviction from
27 . . . a room, dwelling or premises that a person occupies" and also the "publication of
28 'insured material' that slanders or libels a person or organization or disparages a person's or

3

organization's goods, products or services." Policy at STP00099. They claim that Glenn's cross-complaint raises the potential for liability for such personal injury claims, and that FGIU therefore breached its duty to defend.

## I. The Cross-Complaint

"The determination whether the insurer owes a duty to defend is usually made in the first instance by comparing the allegations of the complaint with the terms of the policy." Horace Mann Ins. Co. v. Barbara B., 4 Cal.4th 1076, 1081 (1993) (citing Gray v. Zurich Ins. Co., 65 Cal.2d 263, 269 (1966)). "Any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor." Id. (citing CNA Casualty of California v. Seaboard Surety Co., 176 Cal.App.3d 598, 607 (1986)).

Here, Glenn's cross-complaint asserted only economic causes of action, all of which pertained solely to the financial management of the Storek Building. See Cross-Complaint ¶¶ 9-14 (general factual allegations); id. ¶¶15-69 (stating ten causes of action alleging economic harms related to breaches of fiduciary duties). Further, the cross-complaint sought only "contractual and consequential damages," as well as "general damages" and "exemplary damages." Id. ¶ 69. It did not contain any allegation or claim related to Glenn's exclusion from the Storek Building, and it did not assert a claim for wrongful eviction. Neither did the cross-complaint refer to the publication of any materials, much less a false statement, that might be characterized as defamatory, libelous, or slanderous. The cross-complaint asserted no cause of action for defamation, libel, or slander. Thus, the complaint, at least on its face, does not obviously include covered claims that might give rise to a duty to defend.

Nonetheless, the duty to defend extends beyond the specific claims set forth in the cross-complaint. "Indeed, the duty to defend is so broad that as long as the complaint contains language creating the *potential of liability* under an insurance policy, the insurer must defend an action against its insured . . . ." CNA Casualty, 176 Cal.App.3d at 606. "California courts have repeatedly found that remote facts buried within causes of action that may potentially give rise to coverage are sufficient to invoke the defense duty." Pension Trust Fund for Operating Eng'rs v. Federal Ins. Co., 307 F.3d 944, 951 (9th Cir. 2002).

4

Richard and Craig argue that, carefully dissected, the complaint really does contain allegations that would create the potential for liability under the Policy.  They note that Glenn's cross-complaint contains an allegation that they had "inserted themselves into the ownership relationship" regarding the Storek Building, and that they "may have obtained authorization from [Lorraine] to make her trustee's decisions."  Cross-Complaint ¶ 49.  Plaintiffs argue that it is "implicit in these allegations . . . that Craig and Richard Storek ha[d] communicated negative information to their mother about Glenn Storek."  Opp. Ex. 3 at 1.  Moreover, Plaintiffs note that the cross-complaint also alleges that Glenn had worked "diligently, professionally, and at great expense to himself, all in the best interests of bringing the building up to the required standards."  Opp. Ex. 3 at 1 (citing Cross-Complaint ¶¶ 13-14, 42, 55).  From these allegations, Plaintiffs say it is reasonable to infer that Glenn considered the implicit, unflattering statements about him untrue.  Based on these inferences upon inferences about the meaning of Glenn's allegations, Plaintiffs contend that the cross-complaint contains the seeds of a claim for defamation or slander.

The Court rejects this tortured, if imaginative, reading of the cross-complaint.  Simply put, there is *nothing* in the allegations set forth in the cross-complaint that even remotely suggests a potential for liability for personal injury, whether on a theory of wrongful eviction or on a theory of defamation, libel, or slander.  First, it is nothing more than speculation to suggest that Glenn's brothers had made unflattering statements about him to his mother, based merely on the cross-complaint's allegation that they had "inserted themselves into the ownership relationship."  This vacuous allegation does not reasonably suggest any disparagement of Glenn by his brothers.  Nor does this allegation suggest a potential claim for defamation simply by virtue of the fact that Glenn denied the disparagement imagined by his brothers.  A cross-complaint does not contain the "seeds" for a claim of defamation or slander simply because an opposing party considers some of his adversary's accusations untrue.  If the denial of accusations by an opposing party were sufficient to suggest a claim for defamation, then *every* cross-complaint would raise the specter of such claims.  After all, *all* lawsuits contain allegations of wrongdoing, and these allegations are usually denied by an

5

opposing party. The fact that an insurer owes a duty to defend against defamation, slander, or libel does not mean that every denial of an adversary's accusation establishes the insurer's liability. Glenn's cross-complaint contains no reference to an untrue published statement, much less a defamatory one, regardless of the fact that Glenn denied the allegations set forth in his brothers' underlying complaint. "An insurer . . . will not be compelled to defend its insured when the potential for liability is so 'tenuous and farfetched.'" Lassen Canyon Nursery, Inc. v. Royal Ins. Co., 720 F.2d 1016, 1018 (9th Cir. 1983) (quoting Giddings v. Indus. Indem. Co., 112 Cal.App.3d 213, 217 (1980)).

In short, the Court concludes that the cross-complaint itself is insufficient to raise the "potential of liability" under the Policy. CNA Casualty, 176 Cal.App.3d at 606. Therefore, the Court holds that FGIU did not breach its duty to defend against the claims set forth in Glenn's cross-complaint, regardless of the "remote facts buried within [the] causes of action" actually asserted therein. Pension Trust Fund for Operating Engineers, 307 F.3d at 951.

## II. Extrinsic Evidence

An insurer's duty to defend is not limited, however, to the face of the cross-complaint. "Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy." Horace Mann, 4 Cal.4th at 1081. "In determining whether or not the [insurer] was bound to defend . . . courts do not examine only the pleaded word but the potential liability created by the suit." Gray v. Zurich Ins. Co., 65 Cal.2d 263, 276 (1966). "Since modern procedural rules focus on the facts of a case rather than the theory of recovery in the complaint, the duty to defend should be fixed by the facts which the insurer learns from the complaint, the insured, or other sources. An insurer, therefore, bears a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy." Id. at 276-77. "[T]hat the precise causes of action pled by the third-party complaint may fall outside policy coverage does not excuse the duty to defend where, under the facts alleged, reasonably inferable, or otherwise known, the complaint could fairly be amended to state a covered liability." Scottsdale Ins. Co. v. MV Transp., 36 Cal.4th 643, 654 (2005); see also El-Com Hardware, Inc. v. Fireman's Fund Ins.

Co., 92 Cal.App.4th 205, 217 (2001) ("The extrinsic facts known to respondent at the time appellants tendered their defense of the [third party] action, considered in light of the complaint's allegations, reveal a possibility of a covered claim.").

Here, Richard and Craig identify several items of extrinsic evidence in support of their argument that Glenn's cross-complaint raised the possibility of liability for covered personal injury claims. First, they point to a series of e-mails exchanged by members of the Storek family regarding the Storek Building. These e-mails include a number of accusations by Richard or Craig about the mismanagement of the property, as well as Glenn's response that their allegations of his malfeasance were "not truthful." See, e.g., Tancredy Decl., Ex. 4, at STP00432, STP00433, STP00438. One of these e-mails also includes a warning from Glenn that "if anyone crosses the line and causes damage with such willful efforts . . . to probe and scrounge and try to find something in order to smear [him]," then those people "can expect to be held accountable." Id. at STP00442-STP00442. Regarding the possibility of a lawsuit against him, Glenn further stated that he would "reserve the right to make counter claims" if other members of the family felt that he owed them something. Id. at STP00442.

Second, Richard and Craig point to an incident that occurred more than eight months after Glenn had filed his cross-complaint. Evidently, Glenn came to believe in October of 2006 that his brothers had excluded him from the premises of the Storek Building. Both Glenn and his attorney communicated to the two brothers that their ouster of him was unlawful, and the attorney's letter suggested that the brothers "clearly [did] not understand the potential liability to which they are subjecting themselves." Johnson Decl., Ex. 9, at 2; see also Johnson Decl., Ex. 7. A dispute remains about whether Glenn was actually excluded from the premises. Compare Greene Decl., Ex. I, at STP00638 (stating that Glenn needed only to pick up a new set of keys to gain access to the building), with Greene Decl., Ex. G, at STP00622 (suggesting that locks should never have been changed without Glenn's consent). Based on these items of extrinsic evidence, Richard and Craig argue that there is a potential for liability to Craig based on covered (but unpled) claims for wrongful eviction, and slander, defamation, or libel.

7

Plaintiffs' argument misconstrues California insurance law. It does so by conflating two similar, but critically distinct ideas. First, it is beyond cavil that California law allows, indeed requires, insurers to consider evidence "extrinsic" to the allegations set forth on the face of a third-party complaint. Horace Mann, 4 Cal.4th at 1081; Gray, 65 Cal.2d at 276; El-Com Hardware, 92 Cal.App.4th at 217. Such extrinsic evidence may establish an insurer's duty to defend, or it may establish the lack of such a duty. Waller v. Truck Ins. Exch., 11 Cal. 4th 1, 379 (1995). The rationale of this "extrinsic evidence" rule is that neither the insured nor the insurer should be hide-bound by the specific allegations advanced by a third party, when the circumstances of the case clearly establish, or eliminate, the insurer's obligations. As the California Supreme Court stated forty years ago, an insurer "cannot construct a formal fortress of the third party's pleadings and retreat behind its walls." Gray, 65 Cal. 2d at 276.

Next, it is also clear that, under California law, an insurer's duty to defend extends to all suits that raise the "possibility" or "potential" for coverage. Gray, 65 Cal. 2d at 275; CNA Casualty, 176 Cal.App.3d at 606; see also Montrose Chem. Corp. v. Super. Ct., 6 Cal. 4th 287, 295 (1993). Courts in California have frequently recited the mantra that an insurer's duty to defend it broader than the duty to indemnify. Horace Mann, 4 Cal.4th at 1081; Certain Underwriters at Lloyd's of London v. Super. Ct., 24 Cal.4th 945, 958 (2001) ("Whereas the duty to indemnify may indeed be broad, the duty to defend must perforce be broader still."). Thus, under California law, an insurer must defend against groundless, false, or even fraudulent claims, regardless of their merits. Horace Mann, 4 Cal.4th at 1086. In fact, an insurer is excused from its duty to defend only when "'the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage.'" Montrose, 6 Cal. 4th at 295 (quoting Gray, 65 Cal. 2d at 275 n.15). This rule stems from the basic recognition that a duty to defend exists regardless of the merits of the third party's claims. Cal. Ins. Guar. Ass'n v. Wood, 217 Cal.App.3d 944, 948 (1990) ("To conclude otherwise would not only frustrate the insured's reasonable expectation that the

//

1 insurer will defend, but also create a peculiar form of coverage restricted to only those cases
2 which the insurer decides are brought on meritorious legal and factual grounds.")

3     Plaintiffs take these two distinct principles of law and combine them. Their argument
4 proceeds as follows. First, an insurer must consider extrinsic evidence, and second, an
5 insurer has a duty to defend when there is merely a potential for liability. Thus, Plaintiffs
6 argue, insurers have an obligation to provide a defense whenever extrinsic evidence raises
7 the potential for liability.

8     This syllogism is perhaps supported by the dicta of numerous California cases, but
9 only when the courts' statements are viewed out of context. Placed in its proper context,
10 Plaintiffs' argument is simply contrary to the law. As to the first line of decisions, the cases
11 make it clear that extrinsic evidence is sufficient to compel an insurer to defend only when
12 the evidence pertains to claims actually asserted by the third party. See, e.g., Horace Mann,
13 4 Cal.4th at 1081 (stating that extrinsic facts "give rise to a duty to defend when they reveal a
14 possibility that *the claim* may be covered by the policy" (emphasis added)); Gray, 65 Cal.2d
15 at 276-77 (stating that an insurer's duty to defend is "fixed by the facts which the insurer
16 learns from the complaint, the insured, or other sources," and holding that the insurer had a
17 duty to defend because *the facts pled in the complaint* would have supported alternate,
18 covered claims, notwithstanding "the theory of recovery" actually advanced by the third
19 party); El-Com Hardware, 92 Cal.App.4th at 217 (stating that "extrinsic facts known to the
20 insurer can generate a duty to defend" when "they reveal a possibility the policy *may cover*
21 *the claim*").

22     As to the second line of cases regarding the insurer's duty to defend whenever there is
23 the "possibility" or "potential" for coverage, the decisions make clear that this concept, too,
24 is restricted to the nature of the lawsuit actually asserted by the third party. Contrary to
25 Plaintiffs' assertion, an insurer owes no duty to defend based upon mere "speculation" as to
26 claims that a third party might have brought. "An insured may not trigger the duty to defend
27 by speculating about extraneous 'facts' regarding potential liability *or ways in which the*
28 *third party claimant might amend its complaint at some future date*. This approach

9

1 misconstrues the principle of 'potential liability' under an insurance policy." Gunderson v.
2 Fire Ins. Exch., 37 Cal.App.4th 1106, 1114 (1995) (emphasis added).  Thus, "the insured
3 may not speculate about unpled third party claims to manufacture coverage." Hurley Constr.
4 Co. v. State Farm Fire & Cas. Co., 10 Cal. App. 4th 533, 538 (1992).  That is precisely what
5 Plaintiffs purport to do here.

For whatever reason, Glenn decided not to include any allegations about his brothers' "untrue statements" or his exclusion from the Storek Building in his cross-complaint, and he also elected not to advance any claims for wrongful eviction, defamation, slander, or libel. His complaint thus contains neither the legal claims that would give rise to coverage under the Policy, nor any of the factual allegations that would be necessary to support such claims. Here, as in the Ninth Circuit case of Microtec Research v. Nationwide Mutual Insurance Co., the third party "knew about [the extrinsic facts] before [he] filed suit, perhaps could have sued [based on those facts], but did not." 40 F.3d 968, 971 (9th Cir. 1994).  "Whatever [Glenn's] reasons were for omitting a claim based on [those extrinsic facts], it remains the law of California that when *the underlying suit* raises no potential for a liability covered by the policy, the insurance company's duty to defend is not triggered." Id. (emphasis added).

The duty to defend is broad, but not so expansive that it requires an insurer to undertake a defense as to claims that are both factually and legally untethered from the third party's complaint.  As the Ninth Circuit recently stated:

> To support a finding of potential liability, the plaintiffs [in the underlying litigation] would need to allege new facts of bodily injury.  Mere speculation that the plaintiffs could or will allege such facts does not give rise to a duty to defend.  The possibility of an amendment does not require the insurer to speculate about any conceivable claim that a plaintiff might bring against the insured or to spin out wild theories of recovery for every conceivable damage.  Liability under the policies can only be characterized as speculative and hypothetical.  The duty to defend, albeit a broad one, encompassing liability for damages potentially covered under the policies, does not stretch this far.

Upper Deck Co. v. Fed. Ins. Co., 358 F.3d 608, 615-16 (9th Cir. 2004).  Simply put, there is no evidence to impose a duty to defend when the underlying lawsuit sets forth neither the facts nor the legal claims necessary to bring the lawsuit within the terms of the policy.

//

Finally, Plaintiffs' theory of the case fails, at least partially, for an additional reason. Richard and Craig argue that FGIU was required to provide a defense because, in their view, Glenn might have amended his complaint to include a claim for wrongful eviction, due to Glenn's perception that the two brothers had changed the locks and excluded him from the Storek Building. The facts giving rise this putative claim, however, all occurred nearly eight months after Glenn filed his cross-complaint. Under California law, an insurer's duty to defend is determined by "those facts known by the insurer *at the inception of a third party lawsuit*," Montrose, 6 Cal. 4th at 295 (emphasis added), or "from the facts and inferences known to an insurer from the pleadings, available information and its own investigations *at the time of the tender of defense*," CNA Casualty, 176 Cal.App.3d at 610 (emphasis added). Plaintiffs have pointed to no case to support the remarkable proposition that a duty to defend might arise from facts or circumstances that all occur *subsequent* to the filing of the third party's complaint. To be sure, there are cases holding that the amendment of a third party's pleading might give rise to the duty to defend where none existed before. See, e.g., Lipson v. Jordache Enters., Inc. 9 Cal. App. 4th 151, 154-57 (1992) (indicating that an amended complaint containing covered claims would give rise to a duty to defend, even if the original complaint contained no covered claims). But there are no California cases holding that unpled facts, occurring after the filing of the third party's complaint, are sufficient to establish an insurer's duty to defend.

There is a good reason why no courts have imposed a duty to defend under such circumstances. If the law permitted an insured to establish a duty to defend on this basis, an insured could simply concoct a duty to defend. For example, suppose a third party sued an insured for five claims, all of which clearly fall outside the scope of coverage. If the law were as Plaintiffs suggest, then an insured could simply commit some additional act against the third party giving rise to a potential covered claim. Regardless of whether the third party actually wished to pursue the covered claim, or to impose liability on the insured for such subsequent actions, Plaintiffs' view of the law would require the insurer to provide a defense. That is precisely what Richard and Craig seek to do in this case. Eight months after Glenn

11

filed his cross-complaint, they changed the locks on the Storek Building.  Now, even though Glenn never pursued a lawsuit based on his alleged exclusion from the property, Richard and Craig want to invoke their own "wrongful" actions as a basis for imposing liability on their insurer.  When asked at oral argument whether Plaintiffs had any case to support the proposition that such unpled, subsequent events could give rise to a duty to defend, Plaintiffs' counsel cited El-Com Hardware, Inc. v. Fireman's Fund Insurance Co.  That case, however, stands only for the proposition that an insurer has an ongoing duty to consider extrinsic evidence related to events "*before* the [third party] action was filed."  92 Cal.App.4th at 218 (emphasis added).  Indeed, the court in El-Com Hardware explicitly acknowledged that if such evidence pertained only to events occurring *after* the filing of the third-party complaint, "the duty to defend would, arguably, cease."  Id.  Thus, for this additional reason, Plaintiffs cannot establish FGIU's duty to defend based on Glenn's unpled claim for wrongful eviction.

### III.  Summary Judgment Standard

Without any basis for arguing that Glenn's cross-complaint even "potentially" raises a covered claim, Gray, 65 Cal. 2d at 275, Plaintiffs fall back on the standard of review.  They note that an insurer's evidentiary burden is particularly high in a duty-to-defend case, and especially in the context of a motion for summary judgment.  Whereas "the insured must prove the existence of a *potential for coverage*, . . . the insurer must establish the *absence of any such potential*."  Montrose, 6 Cal. 4th at 300.  "In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*."  Id.  Plaintiffs thus repeatedly argue that "an insurer may defeat a motion for summary judgment [on the duty to defend] only by producing undisputed extrinsic evidence conclusively eliminating the potential for coverage under the policy."  Anthem Elecs., Inc. v. Pac. Employers Ins. Co., 302 F.3d 1049, 1060 (9th Cir. 2002) (quoting Maryland Cas. Co., 48 Cal.App.4th 1822, 1832 (1996)).  Plaintiffs contend that FGIU cannot prevail on summary judgment because it has not conclusively proved a negative.

//

This Court is convinced that FGIU has met its burden of proof on summary judgment. California law does not require FGIU absolutely to prove that no claim could *ever* be asserted by a third party that might fall within the terms of the Policy. Instead, the law requires FGIU to demonstrate that the claims actually advanced fall outside of the Policy. This much FGIU has done, for the reasons stated above. Specifically, FGIU has demonstrated that none of Glenn's theories of liability, nor the facts supporting those theories, whether intrinsic or extrinsic to the complaint, give rise to a claim that is even potentially covered under the Policy. Under these circumstances, it is *Plaintiffs* who bear the burden to establish "the potential of coverage," Montrose, 6 Cal. 4th at 300, meaning that they must make "a *prima facie* showing . . . that the underlying action fell within coverage provisions," Maryland Casualty Co., 48 Cal.App.4th at 1832.

Even in the context of a duty-to-defend case, the burdens of proof are no different than any other motion for summary judgment. Once a moving party such as FGIU "produce[s] evidence negating an essential element of the nonmoving party's claim . . . or show[s] that the nonmoving party does not have enough evidence of an essential element," it become the duty of the nonmoving party, in this instance Richard and Craig, "to produce enough evidence to create a genuine issue of material fact." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102-03 (9th Cir. 2000). It is true that, in the context of an insurer's duty to defend, the evidentiary burdens "reflect[] the substantive law," meaning that the parties' burdens of production and proof correspond to the "broad duty" owed by an insurer to defend against covered claims. Montrose, 6 Cal. App. 4th at 295, 300. But even the rigorous standard of summary judgment does not relieve an insured of his or her evidentiary burden -- or permit an insured to rely on conjecture and speculation -- where, as here, the insurer has affirmatively demonstrated that the claims set forth in the third-party complaint raise no possibility of coverage.

## CONCLUSION

For the reasons set forth above, the Court concludes that FGIU has carried its burden of showing that Glenn's cross-complaint "can by no conceivable theory raise a single issue

13

which could bring it within the policy coverage." Id. at 300.  The evidence put forth by Richard and Craig is inadequate to refute this showing or to establish even "the possibility of coverage."  Id.  Instead, their effort to defeat summary judgment rests upon precisely the sort of "speculation" about "unpled claims" that is insufficient establish a duty to defend under California law.  Upper Deck, 358 F.3d at 615-16; Microtec, 40 F.3d at 971.  Accordingly, FGIU's motion for summary judgment is GRANTED.

**IT IS SO ORDERED.**

Dated:  August 20, 2007

CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE